[No. 816-3. Division Three. April 18, 1974.]

CENTRAL WASHINGTON PRODUCTION CREDIT ASSOCIATION, *Respondent*, v. CARL A. BAKER, SR., *et al.*, *Defendants*, PROSSER COMMISSION COMPANY, INC., *et al.*, *Appellants*.

*Dwight A. Halstead*, for appellants.

18

*Lonny R. Suko* (of *Lyon, Beaulaurier, Aaron, Weigand & Suko*), for respondent.

GREEN, C.J.—In January 1969, plaintiff, Central Washington Production Credit Association, loaned a sum of money to Louis J. Cook, evidenced by a promissory note and a security agreement. The security interest was properly perfected by the filing of a financing statement on January 22, 1969. The financing statement covered

> all crops, livestock, farm equipment, farm supplies and other farm products. After-acquired collateral is also covered. Disposition of collateral is *not* hereby authorized.

The proceeds or products of the collateral were also covered. The security agreement with Mr. Cook provided:

> Debtor will not permit any of the Collateral to be . . . sold, . . . *without first having .obtained the written consent of the Secured Party.*

(Italics ours.)

On June 11, 1969, the defendant, Prosser Commission Company, Inc., purchased 14 head of cattle from Cook. These cattle were covered by the foregoing financing statement and security agreement. Defendant issued a check payable to Cook for $2,535 and Cook allegedly failed to account for these proceeds to the plaintiff. Plaintiff brought this action for conversion to collect these proceeds from the defendant upon the ground that the defendant had actual and constructive notice of plaintiff's security interest in the cattle. Defendant appeals from the granting of a motion for summary judgment in favor of the plaintiff for $2,535.

 The central theme of defendant's argument on appeal is that a material issue of fact exists as to whether or not the plaintiff authorized Cook to sell cattle without first obtaining plaintiff's written consent, thereby waiving the provision in the security agreement. This argument is grounded in RCW 62A.9-306(2):

> Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor un-

less his action was authorized by the secured party in the security agreement *or otherwise,* and also continues in any identifiable proceeds including collections received by the debtor.

(Italics ours.) A buyer of farm products from a person engaged in farming operations does not take free of this provision. RCW 62A.9-307.

█ The writers of the Washington comments to RCW 62A.9-306(2) observed:

This subsection in its provision for pursuit of the collateral makes no change in Washington law.

These writers refer to *Bunn v. Walch,* 54 Wn.2d 457, 342 P.2d 211 (1959), a conversion case, as containing a useful discussion of consent by the security holder. In that case, at page 463, the court states:

The cause of action being in tort, it is a valid defense if the plaintiffs are shown to have consented to those acts for which they now seek to recover. Such consent may be shown from implication arising from a course of conduct as well as by express words.

The term "or otherwise" contained in RCW 62A.9-306(2) should be construed in accordance with this language. *See Clovis Nat'l Bank v. Thomas,* 77 N.M. 554, 425 P.2d 726 (1967); *see United States v. Central Livestock Ass'n,* 349 F. Supp. 1033 (D.N.D. 1972); *see* 4 R. Anderson, *Uniform Commercial Code* § 1-306:18 (2d ed. 1971, Cum. Supp. 1973-74).

The record discloses that Cook sold cattle on February 7, March 18, March 31, April 21, May 26, June 19, July 24, August 11 and October 21, 1969; February 20, April 14 and December 8, 1970; and January 4, 1971, accounting for the proceeds to the plaintiff. The only sale for which the proceeds were allegedly not accounted for to the plaintiff was the June 11, 1969, sale to the defendant. There is nothing in the record showing that prior to any of these sales plaintiff gave its written or oral consent; nor, is there any showing that after any of these sales plaintiff directed Cook not to sell until he had plaintiff's consent. Oliver Brown, manager

of plaintiff during the time in question, testified on deposition:

Q Is it commonly a practice of the Central Washington Production Credit Association that when one of their clients is going to sell some of the cattle and comes in and tells you that, you make a notation that he is going to sell a certain number of cattle?

A Very seldom do you have the information before the fact.

Q Usually the client sells the cattle before you know it?

A Yes, and applies the proceeds.

Q How do you know he applies the proceeds?

A We dealt with 99 per cent honest people.

He also testified that he did not know whether anyone told Cook not to sell cattle without having the proceeds made payable jointly to himself and the plaintiff; however, he did testify that Cook was told that all proceeds on sales were to be applied to the loan. Further, on the margin of a photocopy of plaintiff's check No. 1859 dated May 15, 1969, supported by a voucher of the same reference, for $1,200 payable to Cook, we find the following handwritten notation:

*Sell* one Guernsey cow, three Black Angus Heiffers, one Holstein steer, two Holstein Heiffers, one Guernsey cow, one Heiffer.

(Italics ours.) This notation, particularly in the context of the prior sales, raises a fact question as to whether the instant sale was authorized or consented to by the plaintiff. There is no reference in the documents as to whether this notation was made at the time it was delivered to Cook, or whether it relates directly to the cattle sold by Cook to the plaintiff. The affidavit of Barbara Brahs, vice-president and secretary-treasurer of defendant, shows that some of the cattle purchased by defendant from Cook were of the same kind listed in the quoted notation. The record does not contain an affidavit from Cook.

It is our view that on this record a material issue of fact existed as to whether plaintiff had directly waived the requirement of written consent, or had impliedly by its

prior course of conduct authorized Cook to sell the 14 head of cattle. In reaching this conclusion, we bear in mind that the record must be construed in a light most favorable to the nonmoving party.

The order granting summary judgment is reversed and the case is remanded for trial.

MUNSON and McINTURFF, JJ., concur.