**In the Matter of MATTO'S, INC., Debtor.**

**MATTO'S, INC., Plaintiff,**

v.

**OLDE COLONIE PLACE, Defendant.**

**Bankruptcy No. 80–03104–B.
Adv. No. 80–1797–B.**

United States Bankruptcy Court,
E. D. Michigan.

Jan. 19, 1981.

▮

---

Jaffe, Snider, Raitt, Garratt & Heuer by Lawrence K. Snider and Linda W. Etkin, Detroit, Mich., for plaintiff.

Snyder & Handler, P. C. by Wallace M. Handler and Arthur Cox, Birmingham, Mich., for defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This controversy involves the construction of section 9–402(7) and section 9–306(2) of the Michigan Uniform Commercial Code. The facts are not in dispute and are as follows:

Olde Colonie Place, a Michigan copartnership ("Olde Colonie"), owned certain restaurant equipment, fixtures and inventory which it used in connection with the operation of a restaurant in Rochester, Michigan. In November, 1976, Olde Colonie sold this equipment to F. J. & F. Incorporated, a Michigan corporation ("F. J. & F."). F. J. & F. executed a promisory note to Olde Colonie for part of the purchase price and a security agreement granting a security interest to Olde Colonie in the restaurant equipment to secure payment of the note.

The security agreement executed by F. J. & F. to Olde Colonie provides

"That the debtor shall not attempt to sell, encumber, assign, dispose of or transfer any interest in said property, or remove the same or any part thereof . . . without the written consent of the secured party."

Olde Colonie properly perfected its security interest by filing a financial statement listing F. J. & F. as the debtor.

In April, 1979, F. J. & F. sold this property to Matto's, Inc. ("Matto's"), subject to Olde Colonie's security interest. Olde Colonie consented to the sale, but did not authorize the transfer free of its security interest.

Matto's filed a petition under chapter 11 of the Bankruptcy Code on June 4, 1980. On October 22, 1980, Matto's filed a complaint to invalidate Olde Colonie's security interest in the restaurant equipment, fixtures and inventory.

It is the contention of Matto's that since Olde Colonie consented to the transfer of the collateral subject to its security interest to a new debtor, it was required to file an amended financing statement listing the new debtor so that persons dealing with the new debtor would not be misled and, because it failed to do so, its security interest is invalid.

Section 9–301 of the Uniform Commercial Code provides that an imperfected security interest is subordinate to the rights of

"(1)(b) a person who becomes a lien creditor before the security interest is perfected;

"(3) a 'lien creditor' means . . . the trustee in bankruptcy from the date of the filing of the petition. . . ."

A debtor in possession has the rights and powers of a trustee in bankruptcy. Section 1107 of the Bankruptcy Code. Thus, the debtor in possession is a proper person to contest the security interest of Olde Colonie.

■ The resolution of the question posed requires a consideration of section 9–402(7) and section 9–306(2) of the Uniform Commercial Code of the State of Michigan.

Section 9–402(7) provides as follows:

"(7) A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer."

Section 9–402(7) was adopted as an amendment to the Uniform Commercial Code by the American Law Institute and the National Conference of Commissioners on Uniform Laws in 1972. The amendment was enacted by the State of Michigan in 1978. However, neither the State of Michigan nor any other state which has adopted this amendment, has dealt with its application to the facts presented by this controversy.

The last sentence of subsection (7) clearly and unequivocably states that: "A filed financing statement remains effective with respect to collateral transferred even though the secured party knows of and consents to the transfer." Matto's, however, contends that this section has but limited application; that it applies only to cases where the name of the original debtor is changed or where the debtor changes the structure of the business as, for example, from a sole proprietorship to a corporation, and transfers its collateral to the successor entity—what is commonly referred to as an "in house" transfer, but does not cover a transfer of the collateral from the debtor who is listed on the financing statement, to an entity wholly unrelated to the listed debtor. The sentence cannot be so read. The statutory language does not remotely suggest any such limitation, and the comments to subsection (7) of section 402 makes it clear that no such limitation was intended:

"Subsection (7) also deals with a different problem, namely, whether a new filing is necessary where the collateral has been transferred from one debtor to another. This question has been much debated in pre-Code law and under the Code. This Article now answers the question in the negative. Thus, any person searching the condition of the ownership of a debtor must make inquiry as to the debtor's source of title, and must search in the name of a former owner if circumstances seem to require it."

In re Conger Printing Company, Inc., 18 UCC Rep. 224 (Or.1975), In re Taylorville Eisner Agency, Inc., 445 F.Supp. 665 (S.D. N.Y.1978), and In the Matter of Ocean Electronics Corporation, 461 F.Supp. 348 (S.D. Cal.1978), relied upon by the debtor, do not deal with the problem before the court. In In re Conger, supra, the original debtors, after the execution of the security agreement, incorporated, and the assets subject to the security interest were transferred to the corporation. The filed financing statement listed the original debtor. The secured creditor was aware, prior to the filing of the financing statement, that the debtor's name would be changed. The court held that a secured creditor who consents to the transfer of his collateral prior to filing a financing statement, is charged with a duty

to file an accurate statement, even if he must investigate in order to find out the true facts and even if he must refile. The instant case is clearly distinguishable. Olde Colonie did not consent to, nor was it aware of, any intended transfer prior to perfecting its security interest.

In *In re Taylorville Eisner Agency, supra,* the secured creditor perfected a security interest in property held by individual debtors. After perfection, the property was transferred to a corporation organized by the debtors—the so-called "in house" transfer, to which the debtor has argued the application of section 9–402(7) should be restricted. The court held that the creditor's security interest remained valid even though the creditor did not refile. The basis for the court's conclusion is stated as follows:

> "The third sentence transfer situation is somewhat different. In the present case the transferee corporation clearly knew from the note and security agreement of the transferor debtor that the collateral, including after-acquired inventory and merchandise, was subject to a perfected security interest. The third sentence of subsection 7 is clear that the filed statement remains effective with respect to collateral transferred by the debtor regardless of the knowledge or consent of the secured party...." At p. 669.

There is nothing in the court's opinion to indicate that it would have required the secured creditor to refile if the transfer had been other than an "in house" transfer.

In *Ocean Electronics, supra,* a corporate debtor transferred property subject to the security interest of the secured creditor without its knowledge or consent. The secured creditor became aware of the transfer after about a month and approximately six months before the transferee debtor filed a chapter XI petition. The court held that it was not necessary for the secured creditor to file a new financing statement listing the transferee as a new debtor to preserve its security interest. Admittedly, the transfer in *Ocean Electronics* was made without the consent of the secured creditor, but the court nowhere intimates that it would have been decided otherwise if the transfer had been made with its consent.

Undoubtedly, persons dealing with a transferee debtor may be misled if the secured creditor is not required to refile when the collateral, subject to its security interest, is transferred to a new debtor; but the danger of being misled is the same in all cases in which the encumbered collateral is transferred to a debtor with a different name. The danger does not exist solely in cases where the transfer is made to an entity unrelated to the original debtor.[1]

■ It remains to consider what effect, if any, section 9–306(2) has upon this controversy. Section 9–306(2) provides that "a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise...." In contrast to section 9–402(7), section 9–306(2) appears to provide that the security interest of a secured creditor terminates if he consents to the transfer of the encumbered collateral, no matter what form the consent takes.[2] However, any such construction of section 9–306(2) reads the third sentence of subsection (7) of section 9–402 out of the Code. This, a court should not do, if it is at all possible to reconcile the conflicting provisions. To the extent possible, every clause and word of a statute should be given effect.

> "[A] 'cardinal principle of statutory construction is to save and not to destroy,' N.

---

1. There has been no contention that any of the inventory was acquired by Matto more than four months after the transfer of the collateral to it by F. J. & F. Accordingly, the question of the impact of section 9–402(7) upon inventory acquired more than four months after a transfer, raised by paragraph 1 of subsection (7) of section 9–402, is not in issue. See *In re Taylorville Eisner Agency, Inc., supra.*

2. Coogan, "The New UCC Article 9," 86 Harv. L.Rev. 477, 526–527 (1973); Levenberg, "Comments on Certain Proposed Amendments to Article 9 of the Uniform Commercial Code," 56 Minn.L.Rev. 117, 126–129 (1971).

L. R. B. v. Jones & L. Steel Corp. 301 U.S. 1, 30, 57 S.Ct. 615, [621] 8 L.Ed. 893, 907, 108 A.L.R. 1352. It is the duty 'to give effect, if possible, to every . . . clause and word of a statute,' *Montclair v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 432, 433." *United States v. Menasche*, 348 U.S. 528, 538 [75 S.Ct. 513, 520, 99 L.Ed. 615] (1955). (Parenthetical expression supplied.)

The apparent conflict of section 9–306(2) and the third sentence of subsection (7) of section 9–402, is subject to reconciliation. Under section 9–306(2), the security interest of a secured creditor terminates if the secured party authorizes a sale or transfer "in a security agreement or otherwise." Authorization of the sale or transfer in a security agreement clearly contemplates a written authorization. To effect a reconciliation of section 9–402(7) with section 306(2), particularly in cases where the security agreement prohibits the debtor from transferring the encumbered collateral without the written consent of the secured creditor, the term, "otherwise," is not satisfied by any form of consent which does not clearly and unambiguously authorize disposition of the collateral free of the security interest. The conclusion that mere consent to the transfer of collateral does not deprive a secured creditor of his security interest in such property, has been reached without reference to section 9–402(7).

In *Central Equipment v. Dolk Tractor*, 23 UCC Rep. 1051 (1978), the court on facts similar to the instant case and without considering the impact of section 9–402(7), held that:

" . . . when a security agreement expressly prohibits the disposition of collateral without the written consent of the secured party, in order for a court to find an authorization permitting disposition free of the security interest within the meaning of section 9306, subdivision (2), there must either be actual prior or subsequent consent in writing by the secured creditor manifesting a purpose to authorize the disposition free of the security interest. Mere acquiescence is insufficient. While we interpret 'or otherwise' in section 9306, subdivision (2), to permit an implied agreement, we believe that such an implied agreement should be found with extreme hesitancy and should generally be limited to the situation of a prior course of dealing with the debtor permitting disposition. The issue is a question of fact, but the trial court should carefully consider the written prohibition against disposition found in the security agreement as an important factor in the factual determination and should determine the matter in favor of the written prohibition unless such conclusion is unreasonable under the circumstances (see § 1205, subd. (4)). At p. 1056.[3]

■ Moreover, even if the provisions in conflict are not subject to reconciliation, Olde Colonie must prevail for an additional reason. Section 9–306(2) in its present

---

3. In the following cases, the court also held without considering section 9–402(7), that unless the consent to sale is in writing or the dealing between the parties justify the conclusion that the secured creditor intended to waive his security interest, the security interest survives: *Baker Production Credit Ass'n v. Long Creek Meat Co., Inc.*, 266 Or. 643, 513 P.2d 1129 (1973); *Garden City Production Credit Assn. v. Lannan*, 186 Neb. 668, 186 N.W.2d 99 (1971); *United States v. E. W. Savage & Son, Inc.*, D.C., 343 F.Supp. 123 (1972), and *Wabasso State Bank v. Caldwell Packing Co.*, Minn., 251 N.W.2d 321 (1977).

In the following cases, the court held that consent to the sale operated as a waiver of the security interest of the secured creditor: *Henrick Savings Bank v. Myers*, Iowa, 229 N.W.2d 252 (1975); *Planters Production Credit Association v. Bowles*, Ark., 511 S.W.2d 645 (1974);

*United States v. Central Livestock Association, Inc.*, D.C., 349 F.Supp. 1033 (1972), and *Central Washington Production Cr. Ass'n v. Baker*, 11 Wash.App. 17, 521 P.2d 226 (1974).

The Uniform Commercial Code statute in issue contained section 9–402(7), but the courts did not discuss the impact of section 9–402(7). *Clovis National Bank v. Thomas*, 77 N.M. 554, 425 P.2d 726 (1967) also held that consent to the sale of the encumbered property operated as a waiver of the secured creditor's security interest, but the state had not adopted section 9–402(7).

In the following cases, the court held that mere knowledge of a sale does not invalidate the secured creditor's security interest: *In re Matter of Guaranteed Muffler Supply Co., Inc.*, 1 B.R. 324 (Bkrtcy.1979); *Vermillion County Production Credit Association v. Izzard*, 111 Ill. App.2d 190, 249 N.E.2d 352 (1916).

form, except for some minor amendments not involving the issue before the court, was part of the Uniform Commercial Code adopted by Michigan in 1964. Section 9–402(7) was not added to the Michigan Uniform Commercial Code until 1978. It is a well-established rule of construction that if provisions in the same Act are in conflict, the provision later in time controls. *American Federation of Government Employees v. Webb*, 580 F.2d 496 (D.C.Cir.1978). Since section 9–402(7) was enacted after section 9–306(2), unless both provisions can be accommodated, subsection (7) of section 9–402 must be given effect to the exclusion of section 9–306(2).

For the foregoing reasons, the complaint to invalidate Olde Colonie's security interest is dismissed.

An appropriate order to be submitted.

The result was reached without considering section 9–402(7) in *In re Matter of Guaranteed Muffler Supply Co., Inc., supra. In re Vermil-* *lion* was decided before section 9–402(7) was enacted.