In re Robert **ELLSWORTH** and Judith Ellsworth, his wife, et al., Debtors.

**TRI–STATE LIVESTOCK CREDIT CORPORATION, a California corporation, Plaintiff-Appellant,**

and

**Spence and Norton, a partnership; A.T. Spence, Jr.; and John Norton, Defendants-Appellants,**

v.

**Robert C. ELLSWORTH, et al., Defendants-Appellees.**

Nos. 83–1836, 83–1837.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 14, 1983.

Decided Jan. 3, 1984.

Evans, Kitchel & Jenckes, by Steven A. Hirsch, Phoenix, Ariz., for plaintiff-appellant.

Jennings, Strouss & Salmon, by Jefferson L. Lankford, Phoenix, Ariz., for defendants-appellants.

Snell & Wilmer, by Peter J. Rathwell, Phoenix, Ariz., for defendants-appellees.

Before DUNIWAY, ALARCON, and BOOCHEVER, Circuit Judges.

DUNIWAY, Circuit Judge:

Tri-State Livestock Credit Corporation and Spence and Norton appeal from the Bankruptcy Appellate Panel's reversal of the bankruptcy court's order of partial summary judgment in favor of Tri-State. *In re Ellsworth,* Bkrtcy.App. 9 Cir., 1983, 28 B.R. 13. We conclude that we have jurisdiction and we reverse.

## I. FACTS.

Spence and Norton's cattle business is financed by loans from Tri-State, secured by Spence's cattle. In 1979, Tri-State and Spence executed a duly perfected security agreement, which secured the loans. It provided that Spence would not sell encumbered cattle without Tri-State's prior written consent. Notwithstanding the agreement, Spence customarily sold cattle without obtaining Tri-State's written consent. Tri-State did not object to these sales because it was understood that the proceeds would be used to pay Tri-State, and in fact they were so used.

In January and May 1981, Spence transferred 801 of the encumbered cattle to the debtor Ellsworth. Whether the transfers were leases or sales is disputed, but for purposes of this appeal they are conceded to be sales. Ellsworth never made any rental or purchase payments. Tri-State did not give express written consent to the sales to Ellsworth.

When Ellsworth got possession of the cattle, he obtained a loan from Arizona Livestock Production Credit Association (ALPCA) to enable him to feed and maintain the cattle. Ellsworth granted ALPCA a security interest in the cattle, which was perfected in April 1980. In August 1981, Ellsworth filed for a reorganization under Chapter 11 of the Bankruptcy Act. He then had possession of the cattle.

Tri-State, Spence, ALPCA, and the reorganization trustee all asserted claims to the cattle. On April 20, 1982, the bankruptcy court concluded that Tri-State had the superior security interest in the cattle, granted Tri-State's motion for partial summary judgment, and denied cross-motions filed by the other interested parties.

While ALPCA's appeal to the Bankruptcy Appellate Panel (BAP) was pending, the bankruptcy court ordered the trustee to liquidate the cattle and make an accounting. The court then ordered a distribution of the proceeds. ALPCA and the trustee filed a notice of appeal to the BAP from that order. That appeal is still pending.

The BAP reversed Tri-State's summary judgment and remanded the case to the bankruptcy court for a factual determination as to whether the transfer of the cattle from Spence to Ellsworth was a lease or a sale. The panel concluded that if the trans-

fers were leases, Tri-State's lien may not have terminated, but if the transfers were sales, the lien did terminate because Tri-State consented to the transfers to Ellsworth. Tri-State and Spence appeal from the BAP's decision.

## II. JURISDICTION.

Tri-State argues that the BAP did not have jurisdiction of the appeal to it because the appeal was from a judgment that was not final, and leave to appeal had not been sought or granted. *See* 28 U.S.C. § 1482(b). We have held that our jurisdiction of an appeal from the BAP depends on whether the order appealed to the BAP was final. *In re Rubin,* 9 Cir., 1982, 693 F.2d 73, 76.

■ In *In re Mason,* 9 Cir., 1983, 709 F.2d 1313, 1316, we held that "we should determine if an order is final in light of the unique nature of bankruptcy procedure." We do so here. The bankruptcy court judgment held that Tri-State had an interest in the cattle superior to the claims of the other parties. The judgment was in the nature of a quiet title judgment. Nothing remained of the adversary proceeding. All that was left to be done was to enforce Tri-State's adjudicated rights in due course of the bankruptcy proceeding, a procedure analogous to the issuance of a writ of possession or an execution in an ordinary civil case. Thus, the judgment was final. The BAP had jurisdiction; we have jurisdiction. *See In re Pacific Trencher and Equipment, Inc.,* 9 Cir., 1983, 718 F.2d 972, vacating *id.,* Aug. 22, 1983 (slip ops. at 3975).

## III. VALIDITY OF SECURITY INTEREST.

### A. *Standard of Review.*

■ On appeal from the BAP, this court applies the same standards of review to the bankruptcy court's ruling as should the BAP: Findings of fact are subject to the "not clearly erroneous" rule, Bkpcy. Rule 7052, F.R.Civ.P. 52(a); conclusions of law are freely reviewable, *In re Mistura, Inc.,* 9 Cir., 1983, 705 F.2d 1496, 1497. State law determines the validity of liens in bankruptcy cases. *In re Southland Supply Inc.,* 9 Cir., 1981, 657 F.2d 1076, 1080 n. 6.

### B. *Validity of Tri-State's Security Interest.*

In general, a course of dealing cannot override the express terms of an agreement. Ariz.Rev.Stat. § 44–2212.D (U.C.C. § 1–205(4)). In the secured transactions context, a buyer of farm products from a farmer takes the products subject to any perfected security interest, unless the secured party has authorized the sale "in the security agreement *or otherwise,*" Ariz.Rev. Stat. § 44–3127.B (U.C.C. § 9–306(2)) (emphasis added); *cf.* Ariz.Rev.Stat. § 44–3128 (U.C.C. § 9–307) (secured interest ends in nonfarm context). Because there is no question here that the security agreement did not authorize the sale (it required prior written consent, which was not given), the issue before us is whether a course of dealing (i.e., the fact that Tri-State had never insisted on prior written consent to other sales) may "otherwise" authorize the sale in question under § 44–3127.B, in light of the rule of § 44–2212.D that express terms control course of dealing whenever the two cannot reasonably be construed as consistent.

The parties do not discuss the nature of the "course of dealing" referred to in § 44–2212, but we note that paragraph A of that section defines it as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."

■ Here, the course of dealing between Tri-State and Spence was that when Spence sold cattle, it obtained cash and paid Tri-State, at which point Tri-State released its security interest in the sold cattle. So far as appears, the sale to Ellsworth is the first in which the buyer did not pay Tri-State. We find it difficult to say that the course of dealing requires that Tri-State's security interest must be deemed to have been released in such a case. In cases where Tri-State was paid, its security interest in the sold cattle was satisfied, and it therefore was released. To apply such a "course of dealing" to a case in which Tri-State was

not paid is to defeat the security interest in the very situation in which it was designed to protect Tri-State. That is what § 44–3127.B is about. It expressly provides that the security interest continues after the sale, unless the action of the debtor (Spence) is authorized by the secured party in the security agreement or otherwise. Here, there was no written consent, in the agreement or "otherwise." To find an implied consent from cases in which Tri-State was paid, in a case in which it was not paid, is going too far.

The security agreement, duly perfected, gave notice to all the world including Ellsworth, who could have checked with Tri-State before buying but did not do so. In buying without getting a written consent, Ellsworth took a chance. He did not pay Spence, and so Spence did not pay Tri-State. Under these circumstances, Tri-State was entitled to enforce its security interest.

Arizona courts have not decided the question. Other courts have differed in interpreting the relation of U.C.C. § 1–205(4) (Ariz.Rev.Stat. § 44–2212.D) and § 9–306(2) (Ariz.Rev.Stat. § 44–3127.B). See J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 102 (2d ed. 1980). Compare First Tennessee Production Credit Ass'n v. Gold Kist, Inc., Tenn.App., 1983, 653 S.W.2d 418, 421, with Anon, Inc. v. Farmers Production Credit Ass'n, Ind.App., 1983, 446 N.E.2d 656, 660–62.

The following cases, among others, support our reasoning and conclusion. First Tennessee, supra, 653 S.W.2d at 421; Southwest Washington Production Credit Ass'n v. Seattle-First National Bank, 1979, 92 Wash.2d 30, 593 P.2d 167; North Central Kansas Production Credit Ass'n v. Washington Sales Co., Inc., 1978, 223 Kan. 689, 577 P.2d 35, 40; Wabasso State Bank v. Caldwell Packing Co., 1976, 308 Minn. 349, 251 N.W.2d 321; Garden City Production Credit Ass'n v. Lannan, 1971, 186 Neb. 668, 186 N.W.2d 99.

Some of the cases on which the appellees rely are not distinguishable on their facts, e.g., Planters Production Credit Ass'n v. Bowles, 1974, 256 Ark. 1063, 511 S.W.2d 645; United States v. Central Livestock Ass'n, Inc., D.N.D., 1972, 349 F.Supp. 1033 (applying North Dakota law); Clovis National Bank v. Thomas, 1967, 77 N.M. 554, 425 P.2d 726; Anon, Inc., supra. Other cases relied on differ somewhat from our case, e.g., Central Washington Production Credit Ass'n v. Baker, 1974, 11 Wash.App. 17, 521 P.2d 226; Lisbon Bank and Trust Co. v. Murray, Iowa, 1973, 206 N.W.2d 96; First National Bank and Trust Co. v. Iowa Beef Processors, Inc., 10 Cir., 1980, 626 F.2d 764 (applying Oklahoma law); but their reasoning tends to support the appellees.

For the reasons that we have stated, we decline to follow the appellees' cases.

The judgment of the Bankruptcy Appellate Panel is reversed and the case is remanded to the Panel with instructions to affirm the judgment of the bankruptcy court.