738

In the Matter of Allen P. DAWLEY individually and d/b/a Dawley Development Co., Debtor.

Lawrence C. BOLLA, Esq., Trustee for Allen P. Dawley, d/b/a Dawley Development Company, Plaintiff,

v.

CREDIT ALLIANCE CORPORATION; and International Harvester Credit Corporation, et al., Defendants.

Bankruptcy No. 82–00441.
Adv. No. 83–0058.

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 9, 1984.

Lawrence C. Bolla and Quinn, Gent, Buseck & Leemhuis, Inc., Erie, Pa., for plaintiff.

Richard J. Fidei and John A. Miller & Associates, Ltd., Beaver, Pa., for Intern. Harvester Credit Corp.

James L. Weisman, Weisman, Pass, & Swartz, Pittsburgh, Pa., for Credit Alliance Corp.

## MEMORANDUM AND ORDER DISTRIBUTING PROCEEDS OF SALE BETWEEN CONFLICTING SECURITY INTERESTS

WM. B. WASHABAUGH, Jr., Bankruptcy Judge.

The Trustee in Bankruptcy sold business equipment and assets of the debtor at public sale for $95,000 and the $9,965 proceeds thereof derived from an International Harvester crawler dozer are in dispute between International Harvester Credit Corporation (International) and Credit Alliance Corporation (Alliance) who hold allegedly conflicting security interests thereagainst.

International's lien was perfected as a purchase money security interest when the dozer was purchased September 17, 1979 by Michael A. Guiste Excavating under a purchase money security agreement and related papers assigned the same day to International which made prompt filings of the financing statements and the current balance secured by the resultant security interest is in excess of the $9,965 proceeds of sale.

The underlying security agreement from Guiste to International's assignor prohibited the owner of the dozer from selling it without the written consent of the holder of the security interest (International), viz.:

"Purchaser ... shall not sell, assign or transfer his interest in said property or remove said property from this state without the written consent of holder,"

and International consented to Guiste's sale of it to the debtor July 22, 1981 by

joining in a document entitled "Transfer of Equity" executed by Guiste and said debtor in which Guiste transferred and assigned "all his equity in the above described property" to Allen Dawley Development and guaranteed payment of the balance of the purchase money to the holder of the security interest (International).

The "Transfer of Equity" form from the seller to the buyer which was joined in by International was dated July 22, 1981 and expressly recites that:

> "the transferee (Dawley) understands that legal title will not pass .... to the transferee until the obligation under said contract (dated September 17, 1979) has been fully paid and satisfied."

Out of an abundance of caution International procured new financing statements from the debtor-transferee and filed them in the office of Prothonotary of Venango County July 29, 1981, and more than twenty days but less than four months after the July 22, 1981 transfer date, August 28, 1981, in the Commonwealth of Pennsylvania's Department of State.

Alliance's asserted lien arises out of security documents in an earlier transaction in which the debtor purchased a pneumatic water well drilling rig and perfected a security interest therein in March 1979 before the perfection of International's purchase money lien against the dozer in September of that year. It suffered a $20,000 loss when it repossessed and sold the drilling rig on default and its asserted lien is alleged to have attached to the dozer under cross collateralization and after-acquired property provisions of the security agreement relating to the drilling rig as of the date of its perfection said to have priority over International's lien averred to have lost its status as a purchase money security interest because the financing statement International procured from the debtor was not filed in the Department of State until more than twenty days after the execution of the Transfer of Equity.

Section 9306(b) of the Pennsylvania Uniform Commercial Code provides the following:

> "*Continuity of security interest in collateral and identifiable proceeds.* —Except where this division otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

Section 9312(d) is as follows:

> "*Other purchase money security interests.*—A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter."

Section 9402(b)(4) and (g) are as follows:

> "(b) .... A financing statement which otherwise complies with subsection (a) is sufficient when it is signed by the secured party instead of the debtor if it is filed to perfect a security interest in the following:

> "(4) Collateral acquired after a change of name, identity or corporate structure of the debtor [subsection (g)]."

and

> "(g) *Sufficiency of name of the debtor.*—A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that

time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer."

Alliance's brief attacking the validity of International's lien confuses the provisions of U.C.C. Section 9312(d) relating to the requirement that to qualify as a purchase money security interest a lien must be perfected within twenty days of delivery of the subject matter which applies to the initial perfection of the lien at the time the collateral was originally purchased, not its later sale, with those of U.C.C. Section 9402(g) invalidating security interests in assets acquired by a debtor more than four months after current filings become misleading through changes of name or corporate structure without making a filing in the new name, and expressly providing no new filing is required when encumbered assets are transferred to a new owner by unequivocally stating in the last sentence of said section:

"A filed financing remains effective with respect to collateral transferred by the debtor (as in the case at bar) even though the secured party knows of or consents to the transfer (also as in the case at bar)."

International obtained new financing statements from the new owner (Dawley) and indexed them within the four-month period referred to in Section 9402(g), but subsequent to the twenty-day period required to perfect a lien as a purchase money security interest at the time the collateral is initially purchased (9312[d]) which was complied with. Section 9402(g) requires new filings only when a debtor changes its name or corporate structure and the filing under the original name becomes seriously misleading in respect to collateral thereafter acquired unless a filing is made in the new name within four months of the name change (an in-house transaction), but no new filing is required to preserve an existing lien when the collateral subject thereto is transferred to a new owner as in the case at bar which is governed by the above quoted last sentence of 9402(g) setting forth explicitly and unambiguously:

"A filed financing remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer."

It follows that International's purchase money security interest perfected as such by filings within twenty days the debtor's assignor received possession of the collateral pursuant to U.C.C. Section 9312(d) (the very day thereof) was not affected by the transfer of Guiste's equity consented to by International, and that the protections against conflicting security interests in the collateral it was accorded as a purchase money security interest by said Section 9312(d) were not in any way thereby impaired.

Alliance's brief admits that Pennsylvania did not adopt the amendments proposed in 1972 by the Commissioners of Uniform Laws requiring new filings within four months of encumbered collateral being transferred to a new owner with a different name. The new filings International made of financing statements it obtained from Dawley and filed within four months of the execution of the transfer of equity form out of an abundance of caution would have complied with this provision if it had been enacted, but it was not enacted, and moreover, the relied on provisions relate only to newly acquired, not presently owned collateral.

The fact that the filing was more than twenty days after the transfer is wholly irrelevant under any interpretation. Alliance's general statements that International lost the protection of the purchase money security interest aspects of its lien by not seasonably making new filings can only be understood on the basis that the scrivener of the brief had in mind the twenty-day filing requirement to perfect a purchase money security interest under Section 9312(d), not the four-months provision applicable only to encumbrances against newly acquired property. The twenty-day provision for perfection of purchase money

security interest applies only when collateral is initially purchased and delivered which was complied with in September of 1979 (see supra).

Alliance's briefs additionally fail to distinguish between the sale of collateral subject to existing liens and sales free, clear and divested of such liens and their transfer to the proceeds of sale.

They also fail to advert to the fact that the Transfer of Equity form International signed authorizing and consenting to the sale of the dozer was only a transfer of the seller equity's in the dozer above the amount owing on International's purchase money security interest and that the transfer of title was not only limited to the seller's equity but was conditioned on full payment of said purchase money encumbrance.

The facts of this case and the legislative background are identical in all material respects with those in *Matto's Inc. v. Olde Colonie Place*, 30 U.C.C.Rep. 1750, 8 B.R. 485, 7 B.C.D. 351 (Bcy.E.D.Mich.1981) in which the relevant issues of fact and law and the controlling authorities are analyzed and discussed by the Honorable George Brody, long-time United States Bankruptcy Judge and member of the National Bankruptcy Conference which we hereby approve and adopt as and for a part of this Opinion.

At Erie, Pennsylvania, this 9th day of November, 1984, the $9,965.00 proceeds of sale of the dozer are awarded to the International Harvester Credit Corporation for the foregoing reasons.