**In re NEATEX, INC., Debtor.**

**Bankruptcy No. BR–R–87–536.**

United States Bankruptcy Court,
D. Nevada.

Sept. 14, 1987.

Sallie B. Armstrong, Hale, Lane, Peek, Dennison and Howard, Reno, Nev., for debtor.

Michael E. Malloy & Fred L. Oats, Walther, Key, Maupin, Oats, Cox, Lee & Klaich, Reno, Nev., for Remuses.

## MEMORANDUM DECISION

JAMES H. THOMPSON, Bankruptcy Judge.

This matter is before the court on an objection to claim filed by the debtor, Neatex, and parties in interest, Mr. and Mrs. Richard Lewien (hereinafter "Neatex"). The claim objected to is held by Lawrence and Marie Remus. Their proof of claim was filed July 20, 1987, and indicates that their $166,048.93 claim is secured and is evidenced by a promissory note, security agreement and deed of trust. Neatex does not object to the amount of the claim, but does object to the claim being classified as secured.

## JURISDICTION

This court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(b)(3), the court finds that this is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(B) and (K). Accordingly, the court shall enter its judgment pursuant to 28 U.S.C. § 157(b)(1).[1]

## FACTS

On March 11, 1983, the Remuses sold a dry cleaning business to Johnson & Flynn, a Washington general partnership. Under the sales agreement, Johnson & Flynn executed a promissory note payable to the Remuses in the amount of $275,000. The promissory note was secured by a security agreement describing various items of personal property, and a deed of trust on a leasehold interest in real property. The Remuses filed a financing statement but did not record the deed of trust.[2]

Johnson & Flynn filed for protection under Chapter 11 of the Bankruptcy Code in 1984. On August 9, 1985, the bankruptcy court approved the sale of the cleaning business to Neatex. The terms of the sale provided that Neatex would assume the $275,000 note. The order approving the sale provided that the sale was "free and clear of all debts, obligations, liens, or encumbrances including all secured, unsecured and priority claims, except those specifically assumed in the sale and purchase...." The Remuses did not oppose the sale and accepted payment from Neatex pursuant to the assumed note. Neatex filed for relief under Chapter 11 on May 4, 1987.

1. Bankruptcy Rule 3007 provides that when an objection to claim is joined with a demand for relief of the kind specified in Bankruptcy Rule 7001, it becomes an adversary proceeding. Rule 7001(2) indicates that the determination of the validity, priority, or extent of a lien or other interest in property constitutes an adversary proceeding. Since the objection to claim now before the court does demand relief set forth in Rule 7001, the court will treat the matter as an adversary proceeding. Since there are no material issues of fact in dispute, the court will decide the matter in the context of joint motions for summary judgment.

2. The parties have not raised any issues regarding the deed of trust on the leasehold interest. The parties informed the court that the lease expires on September 15, 1987. The only issue presented is whether the security agreement on the personal property is valid and enforceable against Neatex.

Neatex raises two legal arguments regarding the secured status of the claim filed by the Remuses. The parties agree that the Remuses had a perfected security interest against Johnson & Flynn prior to the sale to Neatex. However, Neatex argues that the security interest lapsed when the collateral was sold by Johnson & Flynn. Neatex next argues that even if the security interest did not lapse when the collateral was sold, Neatex, as a debtor in possession under the Bankruptcy Code, can avoid the security interest because the Remuses failed to refile their financing statement after their collateral was sold in the Johnson & Flynn bankruptcy.

## DISCUSSION

The first argument by Neatex challenges the continuing existence of any security agreement between the Remuses and Neatex. Their argument is based on NRS 104.-9306(2) which provides in relevant part as follows:

> 104.9306. "Proceeds"; secured party's rights on disposition of collateral.
>
> 2. Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise....

Neatex contends that since the Remuses did not object to the sale of their collateral in the Johnson & Flynn bankruptcy, by implication, they authorized the transfer within the meaning of NRS 104.9306(2), causing their security interest to lapse.

The security agreement provides that the sale, exchange, or other disposition of collateral outside the ordinary course of the debtor's business, without prior written consent of the secured party constitutes an event of default under the security agreement.[3] The Remuses cite several cases suggesting that when such a provision exists in a security agreement, in order to find authorization within the meaning of UCC § 9–306(2), the secured creditor must actually consent in writing before the disposition is free of the security interest. *In re Mattos*, 8 B.R. 485 (Bankr.E.D.Mich. 1981); *Central California Tractor v. Dolk Tractor*, 78 Cal.App.3d 855, 144 Cal.Rptr. 367 (Cal.Ct.App.1978). The lack of a writing, however, is not conclusive. Both the *Mattos* and *Dolk Tractor* courts recognized that consent can be implied, but where a provision prohibiting the disposition of collateral without written consent exists in the security agreement, such implied consent must be clear and unambiguous. 8 B.R. at 489. "The issue is a question of fact, but the trial court should carefully consider the written prohibition against disposition found in the security agreement as an important factor in the factual determination and should determine in favor of the written prohibition unless such conclusion is unreasonable under the circumstances...." *Id.* at 489 (quoting *Dolk Tractor*).

■ The facts before the court do not show that the Remuses clearly and unambiguously consented to the sale of their collateral to Neatex free of their security interest. It is true that the Remuses did not oppose, and apparently did consent to the sale to Neatex through the Johnson & Flynn bankruptcy. However, mere consent to the sale is insufficient. The court must also find that the secured creditor authorized the transfer free of the security interest. *In re Southern Properties, Inc.*, 44 B.R. 838, 842 (Bankr.E.D.Va.1984).

The facts before the court suggest that the transfer was intended by all concerned to be subject to the security interest. The order approving the sale to Neatex expressly provided that the sale was "free and clear of all debts, obligations, liens, or encumbrances including all secured, unsecured and priority claims, except those specifically assumed in the sale and purchase...." There is no dispute that the

---

**3.** Neatex argues that such a provision merely describes an event of default and does not expressly prohibit the disposition of collateral without written consent of the secured party. The court disagrees with this argument and finds that such a provision describing an event of default is equivalent to a provision expressly prohibiting the disposition of the collateral without written consent of the secured party.

$275,000 promissory note was assumed by Neatex. Paragraph 6 of the promissory note expressly provides that the note is secured by a security agreement and deed of trust of the same date. Based on these facts, the court concludes that Neatex intended to assume the obligations under the security agreement as well as those under the promissory note. The facts suggest that the Remuses consented to the sale because they were confident that their security interest would survive the sale. Had they felt otherwise, it is likely that they would have moved for, and received, adequate protection as provide for in 11 U.S.C. § 363(e).

Having found no express or implied consent by the Remuses to the sale of their collateral free of their security interest, the court holds that the Remuses did not authorize the disposition of their collateral free of liens within the meaning of NRS 104.9306(2). Therefore, under the same provision, the security interest continues in the collateral notwithstanding the sale. Finding the existence of a valid, enforceable security agreement between Neatex and the Remuses, the court will turn to the second argument which relates to perfection of the security interest.

After the sale to Neatex, the Remuses did not file a new financing statement. Neatex argues that the Remuses' security interest is, therefore, unperfected, and, under the strong arm clause, 11 U.S.C. § 544(a), Neatex can avoid the security interest by asserting its status as a hypothetical judicial lien creditor. In opposition to this argument, the Remuses rely on NRS 104.9402(7)[4] which suggests that the original financing statement that was filed when they sold the property to Johnson & Flynn remains effective to perfect their security interest against Neatex. NRS 104.9402(7) provides as follows:

> 104.9402. Formal requisites of financing statement; amendment; amendments; mortgage as financing statement.

7. A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than 4 months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

The last sentence of NRS 104.9402(7) appears to be directly applicable to the facts before the court. The following official comment to this section of the UCC also supports this conclusion:

8. Subsection (7) also deals with a different problem, namely whether a new filing is necessary where the collateral has been transferred from one debtor to another. This question has been much debated both in Pre Code [UCC] and under the Code. This Article [Article 9 of the UCC] now answers the question in the negative. Thus any person searching the condition of the ownership of a debtor must make inquiry as to the debtor's source of title, and must search in the name of a former owner if circumstances seem to require it.

Neatex cites cases indicating that UCC § 9–402(7) should only apply to situations where the previous debtor has changed its name or corporate structure but is in fact the same debtor as before (sometimes referred to as "in house" or "identity transfers").[5] *In re Taylorville Eisner Agency, Inc.,* 445 F.Supp. 665, 669 (S.D.Ill.1977); *In re Conger Printing Co., Inc.,* 18 U.C.C. Rep.Serv. 224 (D.Or.1975); The Remuses

---

**4.** Subsection 7 of UCC § 9–402 was added to the UCC by amendment in 1972 and subsequently adopted by the Nevada Legislature.

**5.** Neatex also argues that the policy of the UCC is to simplify exchange in the market place and that this policy is frustrated by allowing security interests to remain perfected without refiling

cite cases that reach the opposite conclusion. *Southern Properties,* 44 B.R. at 845; *Mattos,* 8 B.R. at 487.

The language cited by Neatex from the *Taylorville* case is somewhat misleading because the language relied upon is taken from comments specifically directed to the Illinois Uniform Commercial Code that do not appear in the official comments to the UCC.[6] The court did little analysis of whether the third sentence of 9–402(7) is limited by the first two sentences in the subsection to "in house" or "identity" transfer cases, probably because the facts before it presented such a case. As pointed out in the *Mattos* case, nothing in the *Taylorville* case indicates what the court might have done had the facts before it been other than an "in house" transfer. 8 B.R. at 488.

The *Mattos* court also distinguished the *Conger* case. It found that the *Conger* case also presented an "in house" transfer situation where the secured creditor knew at the time it originally perfected its security interest that the debtor intended to change its name. 8 B.R. at 487. The *Mattos* court explained that the *Conger* holding imposed a duty on the secured creditor to file an accurate financing statement when the secured creditor consents to the transfer of the collateral prior to filing. *Id.* As was done in the *Mattos* case, the facts now before this court can be distinguished from those presented in *Conger* because the Remuses did not consent to, nor were they aware of any intended transfer prior to perfecting their security interest.

The *Southern Properties* and *Mattos* cases are more analogous to the facts before this court and properly interpret the meaning of the third sentence of UCC § 9–402(7). The last section of subsection 7 clearly states that: "A filed financing statement remains effective with respect to collateral transferred even though the secured party knows of and consents to the transfer." The statutory language and the official comments do not suggest that this language is limited to "in house" or "identity" transfers by the preceeding two sentences in the subsection.

Subsection 7 of 9–402 contains three sentences. The official comments to 9–402 relating to subsection 7 are divided into three paragraphs, each separately discussing one of the three sentences of the statute. The two paragraphs in official comment 7 relate to the first and second sentences of the statute. The following paragraph set forth in official comment 8 discusses the third sentence and indicates that the third sentence addresses "a different problem, namely whether a new filing is necessary where the collateral has been transferred from one debtor to another." Therefore, the draftsmens' official comments treat each sentence of subsection 7 as having import without reference to the other sentences. 44 B.R. at 845.

Careful analysis of the three sentences of 9–402(7) discloses that the concepts in each are distinct. The first sentence relates to the necessity of including trade names or individual partner names in a financing statement. The second sentence relates to whether a security interest remains perfected with reference to new collateral acquired by the debtor more than four months after an "in house" or "identity" change. The second sentence only has application to a security agreement that contains an after acquired property clause. On its face, the second sentence is silent regarding whether an "in house" or "identity" change has any impact on the continu-

when collateral is transferred or a debtor's name is changed since the secured creditor can benefit from secret liens. This argument is not persuasive here because no secret lien is created. Any purported secret lien under these facts is merely a fiction created by 11 U.S.C. 544(a). More importantly, accepting this argument would require the court to read the third sentence of 9–402(7) out of the UCC entirely. The danger of being misled because of a secret lien is the same regardless of whether the collateral is transferred to an unrelated debtor or the same debtor with a different name. *Mattos,* 8

B.R. at 488. If the effect of 9–402(7) is not in accordance with public policy, it is within the providence of the the legislature to amend or repeal the statute.

6. None of the parties have cited any Nevada legislative history that might clarify what the Nevada Legislature might have intended when it adopted the 1972 amendment to 9–402(7). The court will, therefore, rely on the official comments to the Uniform Commercial Code.

ing perfection of a security interest in collateral acquired by the debtor prior to the expiration of the four month period. However, by implication, and if read in conjunction with the third sentence of the subsection, it could be argued that such a security interest remains perfected. The third sentence applies to any transfer of collateral by the debtor that is subject, at the time of the transfer, to a perfected security interest.

■ Based on the foregoing analysis, the court concludes that the language of the third sentence of NRS 104.9402(7) is not limited to "in house" or "identity" transfers. Therefore, the Remuses were not required to refile a new financing statement to continue the perfection of their security interest in the assets acquired by Neatex from Johnson & Flynn.

## CONCLUSION

Having found that the security interest held by the Remuses was not extinguished and remained perfected after the sale from Johnson & Flynn to Neatex, judgment shall be entered in favor of the Remuses. This memorandum decision constitutes the court's findings of fact and conclusions of law.