[Civ. No. 3108. Fifth Dist. Mar. 17, 1978.]

CENTRAL CALIFORNIA EQUIPMENT COMPANY,
Plaintiff and Respondent, v.
DOLK TRACTOR COMPANY et al.,
Defendants and Appellants.

856

## COUNSEL

Sylvia & Blegen, Jackson & Wheatley, Jon A. Blegen and Gregory F. Gilbert for Defendants and Appellants.

Vizzard, Baker, Sullivan & McFarland and Allan H. McFarland for Plaintiff and Respondent.

## OPINION

**HOPPER, J.**—This appeal involves a security interest created under article 9 of the California Uniform Commercial Code.[1]

On August 23, 1971, Progressive Farms, Inc. (Progressive), as the buyer, and Central California Equipment Company (Central), as the seller, signed an installment sales contract and security agreement for the purchase of a self-mechanized corn harvester combine. After perfecting the security agreement by filing with the Secretary of State, Central assigned the note and the security interest to Bank of America on a with recourse basis. The security agreement expressly prohibited the disposition of the collateral without the written permission of the secured party.

Progressive used the harvester for a season and then abandoned corn as a crop. Having no use for the combine, it asked Central for assistance in its sale. Central, through its president Al Franklin, mentioned that the harvester was for sale to Stan Dolk of appellant Dolk Tractor Company (Dolk). Central was interested in finding another buyer to take over the payments on the machine because Progressive was in financial difficulty.

In October 1973, Progressive went out of business and Central repossessed all of the equipment subject to its existing security agree-

---

[1]Unless otherwise stated, all references are to the California Uniform Commercial Code, except that in California the code uses the term "division 9" and this opinion follows the terminology of "article 9" as adopted by the National Conference of Commissioners on Uniform State Laws.

ments. The harvester, however, was not repossessed. On June 4, 1974, Southern Tulare Farming, Inc., a separate corporation having the same interests as Progressive, assumed a new payment schedule.

Meanwhile, Progressive, Dolk, and appellant McCormack, a farmer, were brought together by Elmer Garzoli, one of Central's salesmen, to discuss the possible sale of the combine to McCormack. McCormack ultimately purchased the harvester from Progressive, but claimed at trial that he had no knowledge of the security interest on it. In late 1973, McCormack traded in the harvester for a tractor purchased from Dolk. Dolk also asserted that he had no knowledge of the security interest, but Garzoli testified that he had told Dolk that Bank of America owned the "contract" on the machine. While both Dolk and McCormack claimed that Central had authorized the sale of the harvester and had relinquished the security interest on it, Franklin, the president of Central, denied knowing when, if at all, the sale to McCormack from Progressive actually occurred, and further denied having actively sought any particular purchaser. He also indicated that his company had lost track of the exact location of the harvester and could not find it until after an extensive telephone search. At the time of trial Dolk was in possession of the harvester.

After the revision agreement was executed by Progressive, Southern Tulare Farming, Inc., and Central, under which Southern Tulare took over Progressive's obligation, Southern Tulare defaulted on its payments to Bank of America. The bank notified Central and Central filed suit to recover either the machine or its value from Southern Tulare. Sometime after the suit was filed, Central repurchased the security agreement and the note from Bank of America under the with recourse provision of the original assignment. The precise date was not adduced at trial but a letter from the bank dated January 14, 1976, refers to the repurchase of the contract.

The respondent, Central, filed a complaint for damages in the Kern County Superior Court on March 26, 1975. The complaint alleged that the appellants had disposed of certain farm equipment covered by a security agreement executed in respondent's favor and had failed to thereafter satisfy the underlying debt that the equipment secured.

Judgment was entered against Dolk and McCormack in favor of respondent for $8,769 damages, plus 7 percent interest from October 1, 1974, $1,500 attorney fees and $491.45 costs. Appellants appeal

contending errors in costs and in award of attorney fees and that the security interest did not deprive appellants of title to the harvester because Central had authorized its sale to appellants.

## I. THE ISSUE OF AUTHORIZATION.

Under section 9201 a security agreement is effective according to its terms between the parties against purchasers of the collateral and against creditors, except as otherwise provided in the act. One of the major exceptions to section 9201 is the sale to a buyer in the ordinary course of business (§ 9307). That section is inapplicable here because Progressive, the seller, was a farmer and was not in the business of selling farm machinery. Appellants also rely on section 9306, subdivision (2), however, and contend that there was an authorization to dispose of the collateral free and clear of the security.

Section 9306, subdivision (2), in California, as of the date of the transaction in this case, provided in part: "Except where this division otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."[2]

This appears to be a case of first impression in California. However, there is a plethora of decisions in other jurisdictions. The first was *Clovis National Bank* v. *Thomas* (1967) 77 N.M. 554 [425 P.2d 726], which received considerable discussion, mostly condemnatory, in the law reviews (see Comment (1968) 8 Nat.Res.J. 183; Comment (1967) 20 Baylor L.Rev. 136; Note (1970) 12 Ariz. L.Rev. 391; Comment (1968) 17 De Paul L.Rev. 447, 453, 455; see also Sorelle, *"Farm Products" Under the U.C.C.—Is a Special Classification Desirable?* (1969) 47 Tex.L.Rev. 309, 312-314) and resulted in immediate legislative change in New Mexico. In *Clovis*, the secured party had previously permitted the debtor to sell the collateral without written consent even though written consent was required under the terms of the security agreement. The court held

---

[2]The subdivision was amended in 1974 to substitute following "disposition thereof" the words "unless the disposition" for the words "by the debtor unless his action." This amendment was designed to make it clear that any disposition (except under cutoff sections such as § 9307) carried the security interest with the collateral. Thus, even acts of third persons (such as commission merchants) were covered. The amendment does not make any substantive change in the law applicable to the instant case. (See Hawkland, *The Proposed Amendment to Article 9 of the U.C.C.* (1971) 76 Com.L.J. 416, 419-420.)

that under those circumstances the secured party impliedly acquiesced in the disposition, thereby terminating the security interest under section 9306, subdivision (2). *Clovis* is a controversial decision. Subsequent decisions either followed, declined to follow, or distinguished *Clovis* and reached respective holdings on various grounds, such as the existence or nonexistence of a prohibition on disposition in the security agreement, prior course of dealings, express or implied authorization to sell, inventory, conditional consent, and waiver. (See, e.g., *Lisbon Bank and Trust Company* v. *Murray* (Iowa 1973) 206 N.W.2d 96 (followed *Clovis* even though there was no clause prohibiting disposition); *In re Cadwell, Martin Meat Company* (1970 E.D.Cal.) 10 U.Com. Code Rep. Serv. 710 (knowledge of the sale of collateral without objection impliedly authorized the sale despite an express prohibition of sale without written consent); *Central Washington Production Cr. Ass'n.* v. *Baker* (1974) 11 Wn.App. 17 [521 P.2d 226] (authorization was a question of fact and summary judgment was held improper); *Planters Production Credit Association* v. *Bowles* (1974) 256 Ark. 1063 [511 S.W.2d 645] (typical of the Production Credit Association cases, this court found a waiver by the Production Credit Association's course of dealing that allowed member debtors to dispose of the collateral at will); *Swift & Company* v. *Jamestown National Bank* (8th Cir. 1970) 426 F.2d 1099 (security agreement expressly gave permission to sell the collateral); *Garden City Production Credit Assn.* v. *Lannan* (1971) 186 Neb. 668 [186 N.W.2d 99] (no clear showing of waiver or estoppel); *Baker Production Cr. Ass'n.* v. *Long Creek Meat Co., Inc.* (1973) 266 Ore. 643 [513 P.2d 1129] (conditional consent for sale existed, but the condition was not met and the security interest continued); *Hempstead Bank* v. *Andy's Car Rental System, Inc.* (1970) 35 App.Div.2d 35 [312 N.Y.S.2d 317] (because the buyers were not buyers in the ordinary course of business, there was an issue of fact on the question of implied authorization); *United States* v. *Central Livestock Association, Inc.* (D.N.D. 1972) 349 F.Supp. 1033 (authorized sale found from prior course of dealing); *Borg-Warner Acceptance Corp.* v. *First National Bank* (1976) 307 Minn. 20 [238 N.W.2d 612] (at p. 614 the court says, "To permit evidence of subsequent conduct to be introduced to vary the unambiguous terms of a security agreement is contrary to the basic premise of the U.C.C."); *Wabasso State Bank* v. *Caldwell Packing Co.* (1976) 308 Minn. 349 [251 N.W.2d 321] [petn. for rehg. den. Mar. 17, 1977] (authorization was *not* shown by a failure to object to evidence of a prior course of dealing when an express prohibition against disposition was in the security agreement); *Colorado Bank & Trust Co.* v. *Western Slope Investments, Inc.* (1975) 36 Colo.App. 149 [539 P.2d 501] (trade custom and usage did not prevail over express

terms of the agreement); *In re Kittyhawk Television Corporation* (S.D.Ohio 1974) 383 F.Supp. 691 (secured creditor knew of and consented to the sale); *Long Island Trust Co.* v. *Porta Aluminum Corp.* (1974) 44 App.Div.2d 118 [354 N.Y.S.2d 134] (factual question whether by prior dealings the seller authorized sale by a debtor by asserting right to receive proceeds if chattels were sold. But note that official comment 3 to section 9306, subdivision (2), read differently then than it does now and that New York, as of 1974, had not adopted the 1972 comment change.)

We have carefully considered the rationale of these cases, the purpose of article 9, which is to set out a comprehensive scheme for the regulation of security interests in personal property (see Cal. U. Com. Code comment to § 9101) and other applicable sections of the code such as section 1205, subdivision (4).[3]

■ We hold that when a security agreement expressly prohibits the disposition of collateral without the written consent of the secured party, in order for a court to find an authorization permitting disposition free of the security interest within the meaning of section 9306, subdivision (2), there must either be actual prior or subsequent consent in writing by the secured creditor manifesting a purpose to authorize the disposition free of the security interest. Mere acquiescence is insufficient. While we interpret "or otherwise" in section 9306, subdivision (2), to permit an implied agreement, we believe that such an implied agreement should be found with extreme hesitancy and should generally be limited to the situation of a prior course of dealing with the debtor permitting disposition. The issue is a question of fact, but the trial court should carefully consider the written prohibition against disposition found in the security agreement as an important factor in the factual determination and should determine the matter in favor of the written prohibition unless such conclusion is unreasonable under the circumstances (see § 1205, subd. (4)).

■ The substantial evidence rule applies to the case before us considered in the light of the legal rules above announced. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496

---

[3]Section 1205, subdivision (4) provides: "The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade."

P.2d 480].) The trial court found that Central took no action in allowing the transfer and that there was no authorization by Central permitting disposition of the collateral free and clear of the security interest. That finding and the judgment thereon is supported by substantial evidence in this case. Even though there was contradictory evidence, there was testimony by both Franklin and Garzoli, if believed, to establish: that Garzoli was not authorized by respondent to permit any transfer; that Dolk was told that the harvester was on a contract with the Bank of America; that Central was unaware that the harvester had in fact been transferred. The fact that each or both appellants was told of the contract with Bank of America does not go merely to show actual notice, but also to show substantial evidence implying that any disposition would *not* terminate the security. Appellants' reliance on the revision agreement to show authorization is misplaced. That revision agreement was not a disposition within the meaning of section 9306, subdivision (2); it was an assumption agreement which merely amended the payments and provided for added charges. That agreement was no showing of intent to transfer free and clear of the security interest—in fact it was to the contrary and expressly provided that, except for modifications therein, the original agreement was to remain unchanged. The modification was made in accordance with reasonable commercial standards and was made in good faith. That revision agreement was binding on appellants (§ 9318, subd. (2)).

Appellants further argue that as to third party purchasers, the California Uniform Commercial Code takes property in violation of the due process clause and that a court rule should be adopted requiring the use of a computer or other means capable of providing a printout of both creditor and debtor names (much in the nature of a grantor-grantee index now used in real property transactions). Such a printout may be desirable; however, we do not find that the existing system violates due process.

## II. ATTORNEY FEES.

■ Appellants contend that they cannot be held liable for attorney fees in the absence of either a contract or statute providing for such award (Code Civ. Proc., § 1021). They assert that the California Uniform Commercial Code does not so provide and that the contract is inapplicable because they are not signatories. Respondent relies on Civil Code section 1717 and *Babcock* v. *Omansky* (1973) 31 Cal.App.3d 625 [107 Cal.Rptr. 512]. Contrary to the contentions of appellants, we believe

that this action is based on contract. Furthermore, we hold that appellants, as the successors in interest to the signatories, are liable, the same as the original parties. The award was both proper and reasonable.

▆ Respondent is also entitled to attorney fees on appeal. Although this court possesses the power to appraise and fix attorney fees, the better practice is to remand the cause to the trial court for the determination of such fees (*Arenson* v. *National Auto. & Cas. Ins. Co.* (1957) 48 Cal.2d 528, 540 [310 P.2d 961]; *Genis* v. *Krasne* (1956) 47 Cal.2d 241, 248 [302 P.2d 289]; *Clejan* v. *Reisman* (1970) 5 Cal.App.3d 224, 240 [84 Cal.Rptr. 897]).

## III. Costs.

The court granted the motion to strike the cost of an air fare to Sacramento but failed to take this into account in the judgment. The trial costs should therefore be reduced to $251.45 and the court is ordered to make that adjustment upon further hearing in the trial court in this case.

## IV. Interest.

▆ Appellants contend that no prejudgment interest should have been awarded because the suit was not based on a contract, but rather was an action to enforce a lien. We disagree. Enforcement of a lien is only one of the possible results. In any event, respondent, as a creditor, is entitled to recover interest pursuant to Civil Code section 3287, subdivision (a), which reads in part: "Every person who is entitled to recover damages certain, . . . and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, . . ."

▆ The additional contention of appellants that if interest is awarded it should not have been computed from October 14, 1974, has merit. We are unable to find any basis in the record to use that date for the particular day from which interest accrued under Civil Code section 3287, subdivision (a). That date only appears in the prayer of the complaint filed March 26, 1975. Respondent is entitled to interest from the date the Bank of America was paid off under the with recourse agreement. Logically it would seem that the actual date preceded the date of the filing of the complaint, a date well before January 14, 1976 (as urged by appellants). The January 14, 1976, date is obtained from a letter from the Bank of America introduced into evidence which stated the fact that a certain sum had been paid, but there is no reference to the date of payment. The burden of proving the date of payment to Bank of

America under the with recourse agreement was on the respondent. Respondent failed to establish that date to the certainty required by Civil Code section 3287, subdivision (a). Consequently, the matter should be remanded to the trial court for the sole purpose of determining the date of the payoff, which is the date from which interest accrued.

That part of the judgment fixing costs is reduced to $251.45 and the trial court is directed to make that reduction on its records; that part of the judgment fixing the date from which interest accrued is reversed with directions to the trial court, on the basis of evidence previously presented and such additional evidence as either side may wish to present, to determine the date from which interest accrued in conformity with the views expressed herein; in all other respects the judgment is affirmed. As stated above, attorney fees for services performed by respondent's attorney on this appeal are to be determined and fixed by the trial court. Costs are awarded to respondent.

Franson, Acting P. J., and Chargin, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.